IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


GREEN TREE SERVICING, LLC, ET. AL.                    PLAINTIFFS


VS.                        CIVIL ACTION NO. 3:16-cv-50-WHB-JCG


ANTHONY CHARLES                                      DEFENDANT


## OPINION AND ORDER

This cause is before the Court on two related Motions. Having considered the pleadings, the attachments thereto, as well as supporting and opposing authorities, the Court finds:

Defendant's Motion for Reconsideration is not well taken and should be denied.

The Motion of Plaintiffs to Compel Arbitration is well taken and should be granted.


## I.  Factual Background and Procedural History

Anthony Charles ("Charles") owned a parcel of real property in Walthall County, Mississippi. In 2007, Charles entered a Mississippi Construction Agreement ("Construction Agreement") with Jim Walter Homes, Inc. ("Jim Walter Homes"), for the purpose of having a house built on that property, and for obtaining financing necessary for construction. The Construction Agreement entered by Charles contains the following Arbitration Agreement:

The parties agree that any controversy (whether asserted as an original claim, counterclaim, cross claim or otherwise) arising out of or relating to this Agreement, or the breach thereof, or any negotiations leading up to the making of this Agreement, or any extensions of credit related to this Agreement, or the House that is the subject of this Agreement, or any insurance sold under or in connection with this Agreement, or any relationship resulting from any of the foregoing, whether asserted in tort, contract or warranty, or as a federal or state statutory claim, and whether arising before, during or after performance of this Agreement, shall be settled under this Arbitration Agreement in accordance with the procedures specified below.  This Arbitration Agreement shall encompass and govern not only all controversies between Buyer and Seller, but also all controversies between Buyer and Seller and/or assigns, affiliates and present and former agents or employees of either Buyer or Seller.

The parties agree that as a condition precedent to either party instituting an arbitration proceeding and/or making a demand for arbitration pursuant to the procedures outlined herein, the party seeking arbitration will first notify the other, in writing, of the nature of the claim and/or dispute and then each party shall use their best efforts to resolve the dispute to each of their mutual satisfaction.  If the parties cannot resolve the dispute by mutual agreement within fourteen (14) days of the written notice, then the parties agree to submit the dispute to non-binding mediation, the cost of which will be borne solely by Seller or its assigns....

In the event and only after the parties have been unable to resolve their disputes and/or claims through private negotiations and mediation, shall a party be entitled to institute an arbitration proceeding pursuant to the following procedures....  If the parties cannot agree on the selection of the arbitrator, then the arbitrator shall be selected in accordance with the rules of United States Arbitration and Mediation (USA&M) in effect as of June 30, 2003.  Any arbitration hereunder shall be conducted pursuant to the rules of USA&M in effect as of June 30, 2003....

Any dispute regarding whether a particular controversy is subject to arbitration, including, but not limited to claims contesting the making, existence, enforceability,

> scope or conscionability of this Arbitration Agreement,
> shall be decided by the arbitrator.
>
> ....

Am. Compl. [Docket No. 4], Ex. A, at "Exhibit 'D'".[1]

According to Charles, he executed the Construction Agreement and related documents based on promises made by representatives of Jim Walter Homes that his house would be built "in a good and workmanlike manner using only the highest quality materials and the highest skilled craftsmen", and would be of "the highest quality construction".  Id., Ex. B (Underlying Complaint), at ¶¶ 19, 20, 23.  Charles alleges that the statements by which he was induced to enter the Construction Agreement and related documents were false in that the house "was defectively built and/or never substantially completed."  See id., Ex. B at ¶ 24 (alleging: "The home was constructed without proper regard for the plans and/or materials, or for the contracts, promises and/or representations made to or with" Charles).  The allegedly defective construction was performed by several Mississippi contractors including D.J. McNeil Electric and Plumbing, Inc., and Martin Heating and Cooling, LLC.  Id., Ex. B at ¶ 25.

Based on these allegations, Charles filed a lawsuit against Jim Walter Homes, LLC; Jim Walter Homes, Inc.; Green Tree Servicing, LLC, Successor by Merger to Walter Mortgage Company,

---

[1]  The referenced "Exhibit D" bears electronic docket page numbers 5-7.

LLC; Walter Energy Inc.; Walter Investment Management Corporation; Walter Energy Inc.; Ranchers and Farmers Insurance Company; W. Stewart Robinson; Tawana Boyd; D.J. McNeil Electric and Plumbing, Inc.; and Martin Heating and Cooling, LLC, in the Circuit Court of Walthal County, Mississippi.  Through his Amended Complaint, Charles seeks actual and punitive damages on claims including deceit, false statements/fraud, breach of contract, civil conspiracy, negligence, and intentional infliction of emotional distress.  Charles also seeks an equitable accounting and an injunction preventing the defendants from assigning their interest in the property or seeking foreclosure, and suspending his obligation to make further payments on the house.

Charles's lawsuit was removed on the basis of diversity jurisdiction/improper joinder, and was docketed as Charles v. Ranchers and Farmers Ins. Co., et al., 2:15-cv-39 (S.D. Miss.) ("Charles I")[2].  Following the Suggestions of Bankruptcy by Jim Walters Homes, LLC, and Walter Energy, Inc., an Order was entered by which all proceedings in the case were stayed, and the case was administratively closed.  See Charles I, [Docket No. 32].  While Charles I was stayed/administratively closed, Green Tree Servicing, LLC, and Walter Investment Management Corporation (jointly

---

[2]    Charles I was initially assigned to United States District Judge Daniel P. Jordan and United States Magistrate Judge F. Keith Ball.  By Order, the case was reassigned to the undersigned District Judge and United States Magistrate Judge John C. Gargiulo.  See Charles I, Civil Action 2:15-cv-39, Order [Docket No. 37].

4

"Arbitration Plaintiffs") filed a Complaint in this Court ("Charles II") against Charles seeking to compel him to arbitrate the claims he alleged against them.  The Court can exercise federal subject matter jurisdiction in Charles II pursuant to 28 U.S.C. § 1332. See Am. Compl., ¶¶ 2-7 (establishing that the parties are of diverse citizenship and the amount in controversy exceeds $75,000).

After Charles II was filed, Charles filed a motion seeking its dismissal, or in the alternative to have it transferred and presumably consolidated into Charles I.  The Motion was denied on the grounds that Charles I was not actively being litigated as it had been administratively closed following the filing of the Suggestions of Bankruptcy by Jim Walters Homes, LLC, and Walter Energy, Inc.  See Charles II, Order [Docket No. 14.].  Charles I was later reopened following the lifting of the automatic stays by the bankruptcy court.

The Court now considers the pleadings filed in Charles II.


## II.  Discussion

### A.  Motion for Reconsideration

Charles has moved for reconsideration of the Opinion and Order by which his Motion to Dismiss, or in the alternative, to Transfer was denied.  Again, the subject Motion was denied on the grounds that Charles I had been administratively closed based on the Suggestions of Bankruptcy filed therein and was, therefore, not

actively being litigated.  Charles moves for reconsideration on the grounds that Charles I was administratively reopened following the lifting of the automatic stay by the bankruptcy court.

Motions for reconsideration are governed by Rule 59(e) of the Federal Rules of Civil Procedure.  Under this Rule, an order may be altered or amended in cases in which: (1) there is a need to correct a manifest error of law or fact; (2) the movant uncovered new evidence that was reasonably unknown prior to entry of the order in question; or (3) an intervening change in controlling law occurred.  See Schiller v. Physicians Res. Group, Inc., 342 F.3d 563, 567 (5th Cir. 2003)(citations omitted).  Charles argues that the Order of the Bankruptcy Court by which the automatic stays were lifted constitutes new evidence for the purposes of Rule 59(e).

In his original Motion to Dismiss, Charles argued that Charles II should be dismissed, or alternatively transferred and consolidated, under the first-to-file rule.  Even though Charles I has now been reopened, the Court finds no basis for granting the relief requested by Charles.  First, the first-to-file rule is implicated when "related cases are pending before two federal courts." Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 603 (5th Cir. 1999).  Charles I and Charles II, however, are not currently pending in two different federal courts.  By administrative order, both cases were transferred/reassigned and now are pending in the same division of the same district court and

are assigned to the same district and magistrate judge.  As <u>Charles I</u> and <u>Charles II</u> are now pending before the same judges in the same federal court, there is no reason to transfer <u>Charles II</u> under the first-to file rule.  Additionally, there is no basis for either dismissing <u>Charles II</u>, or consolidating <u>Charles I</u> and <u>Charles II</u> under the first-to-file rule.  A review of the docket in <u>Charles I</u> shows that that case was removed on the basis of diversity of citizenship jurisdiction/improper joinder.  Charles moved for remand arguing that diversity of citizenship is lacking.  In the event the Court determines that federal subject matter jurisdiction is lacking in <u>Charles I</u> and remands that case, the Court could not likewise remand <u>Charles II</u> as that case was initially filed in federal court and rests on its own jurisdictional facts. Accordingly, the Court finds no basis for either dismissing or consolidating <u>Charles II</u>.  Charles's Motion for Reconsideration will, therefore, be denied.


**B.  Motion to Compel Arbitration**

Under the Federal Arbitration Act ("FAA"):

A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

7

9 U.S.C. § 2.  To determine whether a contract "evidenc[es] a transaction involving commerce" for the purposes of the FAA, the United States Supreme Court has held that "control over interstate commerce reaches not only the actual physical interstate shipment of goods but also [extends to] contracts relating to interstate commerce." Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 273-74 (1995).  Here, based on the nature and purpose of the Construction Agreement entered between Jim Walter Homes and Charles, and because it is to be performed by individuals/entities in different states,[3] the Court finds the underlying Construction Agreement involves interstate commerce. See e.g. Mississippi Fleet Card, L.L.C. v. Bilstat, Inc., 175 F.Supp.2d 894, 898 (S.D. Miss. 2001)(finding that as the parties' agreement and attendant arbitration clause was entered into, and was to be performed by, citizens of different states, the agreement involved interstate commerce as that term is defined by FAA precedent).  Accordingly, the Court finds the Construction Agreement and incorporated Arbitration Agreement involve interstate commerce as that term is applied to the FAA and, therefore, may be enforced under that statute. See Allied-Bruce, 513 U.S. at 273-74 (indicating that the term "involving commerce" should be construed liberally as meaning "affecting commerce."); Arce v. Cotton Club of Greenville, Inc.,

---

[3] Jim Walter Homes was a Florida corporation with its principal place of business in Florida. See Am. Compl., Ex. A at "Exhibit 'D'".

8

883 F. Supp. 117, 119 (N.D. Miss. 1995)("Section 2's requirements are met where contractual activity facilitates or affects commerce, even tangentially.").

Next, to determine whether parties to an arbitration agreement should be compelled to arbitrate under the FAA, courts generally apply a two-step analysis. See e.g. Webb v. Investacorp, Inc., 89 F.3d 252, 257-58 (5th Cir. 1996):

> The first step is to determine whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. When deciding whether the parties agreed to arbitrate the dispute in question, courts generally ... should apply ordinary state-law principles that govern the formation of contracts. In applying state law, however, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration. The second step is to determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.

Id. (alterations in original)(citations omitted). Ordinarily, both steps are questions for the court. See Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 214 (5th Cir. 2003). In cases, however, in which "the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." Kubala v. Supreme Prod. Servs., Inc., 830 F.3d 199, 201 (5th Cir. 2016) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995)).

9

> Thus, if the party seeking arbitration points to a
> purported delegation clause, the court's analysis is
> limited.  It performs the first step — an analysis of
> contract formation — as it always does.  But the only
> question, after finding that there is in fact a valid
> agreement, is whether the purported delegation clause is
> in fact a delegation clause — that is, if it evinces an
> intent to have the arbitrator decide whether a given
> claim must be arbitrated.  If there is a delegation
> clause, the motion to compel arbitration should be
> granted in almost all cases.

Id., at 202 (citing Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68-69 (2010)).

As regards the first inquiry, i.e. whether the parties entered a valid arbitration agreement, courts are instructed to "apply ordinary state-law principles that govern the formation of contracts." Kaplan, 514 U.S. at 943; May v. Higbee Co., 372 F.3d 757, 764 (5th Cir. 2004).  Charles argues that there does not exist a valid agreement to arbitrate between him and the Arbitration Plaintiffs because (1) there was no valid assignment of the Construction Agreement and/or (2) non-signatories/affiliates of signatories cannot enforce an arbitration agreement.

The United States Court of Appeals for the Fifth Circuit has held:  "Who is actually bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement." Sherer v. Green Tree Servicing LLC, 548 F.3d 379, 381 (5th Cir. 2008)(quoting Bridas S.A.P.I.C. v. Government of Turkmenistan, 345 F.3d 347, 355 (5th Cir. 2003)).  In Sherer, the plaintiff had entered a loan agreement, which contained the

following arbitration provision: "All disputes, claims, or controversies arising from or relating to this Agreement or the relationships which result from this Agreement ... shall be resolved by binding arbitration." Id. at 380. Although Green Tree Servicing LLC, was not a party, and therefore not a signatory, to the loan agreement, the Fifth Circuit held that Sherer was required to arbitrate the claims he had alleged against Green Tree. As explained by the court:

> According to the broad terms of the Loan Agreement, Sherer has agreed to arbitrate any claims arising from "the relationships which result from th[e] [a]greement." A loan servicer, such as Green Tree, is just such a "relationship." Indeed, without the Loan Agreement, there would be no loan for Green Tree to service, and no party argues to the contrary. Sherer's ... claims arise from Green Tree's conduct as Sherer's loan servicer and, therefore, fall within the terms of the Loan Agreement's arbitration clause. Based on the Loan Agreement's language, Sherer has validly agreed to arbitrate with a nonsignatory, such as the loan servicer Green Tree, and the language is sufficiently broad to permit Green Tree to compel arbitration.

Id. at 382.

Here, the parties to the Construction Agreement agreed to arbitrate any claim arising out of or relating to (1) that Agreement; (2) the breach of that Agreement; (3) any negotiations leading up to the making of that Agreement; (4) any extension of credit related to that Agreement; (5) the House that is the subject of that Agreement, (6) any insurance sold under or in connection with that Agreement, or (7) "any relationship resulting from any of the foregoing." Am. Compl., Ex. A, at "Exhibit 'D'". In addition,

11

the parties agreed that the arbitration provision would "encompass and govern not only all controversies between Buyer and Seller, but also all controversies between Buyer and Seller and/or assigns, affiliates and present and former agents or employees of either Buyer or Seller." Id., Ex. A at "Exhibit D." It is clear from the Complaint that Charles's claims against the Arbitration Plaintiffs are all predicated on the house he was built under the Construction Agreement, the extension of credit he obtained in conjunction with the Construction Agreement, and/or the subsequent sale or assignment of the commercial paper related thereto (i.e. promissory notes, deeds of trust, etc.) to the current owners/holders of those deeds, and the companies servicing the loan agreements. See e.g. Id., Ex. B at ¶ 25 (alleging that the subject house was defectively built and never substantially completed); Id. ¶ 67 (alleging that the Arbitrations Plaintiffs engaged in a scheme "to swindle [him] out of his money and encumber his property to insure that [he] would be forced to continue paying for his grossly defective home at artificially inflated values."); Id. at ¶ 70 (alleging that the Arbitration Plaintiffs created a market for certain securities, i.e. promissory notes/deeds of trust, "arranged for their sale at a profit", and then shared the profits once sold); Id. at ¶ 111 (alleging that Charles is a "creditor" of the Arbitration Plaintiffs who have wrongfully "conveyed and transferred" his property to his detriment). As it is clear that Charles's claims

arise out of or relate to the house he was built and/or the extension of credit he obtained in conjunction with the Construction Agreement, the Court finds Charles has agreed to arbitrate his claims with the non-signatory Arbitration Plaintiffs under the express terms of the Arbitration Agreement.

Additionally, the Court recognizes that under Mississippi law, "'a non-signatory may be able to enforce an arbitration agreement against a signatory where the non-signatory has a close legal relationship with a signatory of the agreement' and where the plaintiff alleges 'substantially interdependent and concerted misconduct' between the signatory and non-signatory." <u>Briovarx v. Transcript Pharmacy, Inc.</u>, 163 So.3d 311, 315 (Miss. Ct. App. 2015)(quoting <u>Sawyers v. Herrin-Gear Chevrolet Co., Inc.</u>, 26 So.3d 1026, 1038 (Miss. 2010)). Here, the Arbitration Plaintiffs are identified as having a close legal relationship with the signatory, Jim Walter Homes. <u>See</u> <u>e.g.</u> Am. Compl., Ex. B, ¶ 92 (alleging that Jim Walter Homes LLC, was a wholly owned subsidiary and complete controlled by of Walter Energy and that, at the time Jim Walter Homes, Inc., ceased to exist, it transferred and assigned "hundreds of millions of dollars" and various commercial paper to Walter Mortgage, Co., which was a wholly owned subsidiary of Walter Investment Management Co.); <u>Id.</u> at ¶ 25 (alleging that Green Tree Servicing, LLC, is a wholly owned subsidiary of Walter Investment Management Corporation). Additionally, Charles has alleged

"substantially interdependent and concerted misconduct" between Jim Walter Homes and the Arbitration Plaintiffs.  See e.g. id. at ¶ 62 (alleging that the Arbitration Plaintiffs and others "acted in concert and conspiracy with each other" for the purpose of defrauding Charles and depriving him of his property); Id. at ¶ 63 (alleging that the Arbitration Plaintiffs and others perpetuated the complained of "home built on your lot scheme" thereby tricking Charles into entering the underlying Construction Agreement); Id. at ¶ 66 (alleging that the Arbitration Plaintiffs and others "combined their money, property, time and skills in the common undertaking of misleading, deceiving, cheating, swindling, overreaching, intimidating and bamboozling" Charles).  The Court finds, because the allegations in Charles's Amended Complaint establish both that (1) the non-signatory Arbitration Plaintiffs have close legal relationships with the signatory, Jim Walter Homes, Inc. (the signatory of the Arbitration Agreement), and (2) there was allegedly "substantially interdependent and concerted misconduct" between the signatory and non-signatory Arbitration Plaintiffs, that Charles can be compelled to arbitrate his claims against the non-signatory Arbitration Plaintiffs under governing Mississippi law.

In sum, having found that (1) the parties agreed to arbitrate all claims arising out of or relating to any relationship resulting from the Construction Agreement, the house that was built, and/or

14

the extension of credit related to the Construction Agreement; and (2) the non-signatory Arbitration Plaintiffs can compel arbitration under Mississippi law, the Court finds the subject Arbitration Agreement entered by Charles is valid.  As discussed below, the issue of whether the Arbitration Agreement is enforceable is one that has been delegated to the arbitrator.

Having found that there exists a valid agreement between Charles and the Arbitration Plaintiffs, the Court next considers whether the subject Arbitration Agreement contains a delegation provision giving the arbitrator the primary power to rule on arbitrability.  The Fifth Circuit has found that if an arbitration agreement contains a delegation provision, "the role of the federal courts is strictly limited — we must refer the claim to arbitration absent some exceptional circumstance."  Kubala, 830 F.3d at 203. The subject Arbitration Agreement entered by the parties contains the following express delegation provision:  "Any dispute regarding whether a particular controversy is subject to arbitration, including, but not limited to claims contesting the making, existence, enforceability, scope or conscionability of this Arbitration Agreement, shall be decided by the arbitrator."  Am. Compl., Ex. A, at "Exhibit D."  Thus, unless Charles "challenge the delegation provision specifically", the Court "must treat it as valid under FAA § 2, and must enforce it under FAA §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole

15

for the arbitrator." Rent-A-Center, West, Inc., 561 U.S. at 72 (alterations in original).

With respect to the delegation provision, Charles first argues that that provision is unenforceable because he did not enter a valid arbitration agreement with the Arbitration Plaintiffs. See Mem. in Supp. of Resp. [Docket No. 25], 21 ("[I]f this Court finds that the arbitration agreement is invalid and unenforceable, then the 'delegation provision' is unenforceable as well."). The Court, however, has already found that a valid agreement to arbitrate exists between the Arbitration Plaintiffs and Charles either based on the express language of the Arbitration Agreement or under Mississippi law. Accordingly, the Court finds this argument lacks merit. Next, Charles argues that he "never intended to delegate the power to decide arbitrability to an arbitrator." Id. at 22. The Court, however, has already found that because the subject Arbitration Agreement expressly contains a delegation provision, there exists "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." Accordingly, the Court finds this argument, too, lacks merit.

Finally, Charles challenges the validity of the Arbitration Agreement on the grounds of procedural and substantive unconscionability. Claims of unconscionability do not affect whether an arbitration agreement has been entered but, instead, permit a court to invalidate an otherwise existing agreement. See

16

e.g. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686 (1996)
(explaining that state contract law principles may be used to
"invalidate an arbitration clause 'upon such grounds as exist at
law or in equity for the revocation of *any* contract.'"); East Ford,
Inc. v. Taylor, 826 So.2d 709, 711 (Miss. 2002)(explaining that if
"an arbitration agreement is found to be unconscionable pursuant to
general state law principles, then it may be invalidated without
offending the Federal Arbitration Act."). The delegation provision
in the subject Arbitration Agreement specifically authorizes the
arbitrator to resolve disputes regarding "whether a particular
controversy is subject to arbitration", which includes claims
contesting the "enforceability, scope or conscionability" of that
Agreement. As such, the Court finds the issue of whether the
Arbitration Agreement is invalid as unconscionable is one that must
be resolved by the arbitrator. Based on that same language, the
Court finds the issue of whether the Arbitration Agreement is
unenforceable because of the lack of pre-arbitration mediation, is
likewise to be decided by the arbitrator.

In sum, having found that a valid agreement to arbitrate
exists between the Arbitration Plaintiffs and Charles, and that the
subject Arbitration Agreement contains a delegation provision under
which the parties agreed to arbitrate arbitrability, the Court
finds the Motion of the Arbitration Plaintiffs to Compel
Arbitration should be granted.

17

**C.   Stay Pending Arbitration**

In addition to seeking to compel arbitration, the Arbitration Plaintiffs have moved to stay litigation of the claims alleged against them pending arbitration as authorized by the FAA.   Under 9 U.S.C. § 3, "the court in which [a] suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration ..., shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ...".   Having found Charles is required to arbitrate the claims he has alleged against the Arbitration Plaintiffs in Charles I, the Court finds all proceedings between the parties herein in that case should be stayed pending arbitration.

### III.   Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that Defendant's Motion for Reconsideration [Docket No. 20] is hereby denied.

IT IS FURTHER ORDERED that the Motion of Plaintiffs to Compel Arbitration [Docket No. 18] is hereby granted.   As Anthony Charles is hereby ordered to arbitrate all of the claims he has alleged against the Arbitration Plaintiffs in Charles I, and as nothing remains to be litigated in this lawsuit, the Court will dismiss

this case.  Either party may move to re-open this case if further judicial intervention is necessary to enforce the rulings of this Court, or to enforce the rulings of the arbitrators.

IT IS FURTHER ORDERED that as Anthony Charles is hereby ordered to arbitrate all of the claims he alleges against the Arbitration Plaintiffs in <u>Charles I</u>, all proceedings in that case will be stayed as between him and the Arbitration Plaintiffs pending arbitration.

SO ORDERED this the 7th day of February, 2017.


<u>s/ William H. Barbour, Jr.</u>
UNITED STATES DISTRICT JUDGE